```
        IN THE UNITED STATES DISTRICT COURT FOR THE
                EASTERN DISTRICT OF VIRGINIA

                      Alexandria Division

EDNA M. DAWSON,                 )
                                )
          Plaintiff,            )
                                )
          v.                    )    1:05cv1270(JCC)
                                )
DONALD H. RUMSFELD,             )
Secretary of Defense            )
                                )
          Defendant.            )
```

## M E M O R A N D U M   O P I N I O N

This matter comes before the Court on Defendant's Motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Defendant's Motion for summary judgment pursuant to Rule 56.  For the following reasons, the Court will grant Defendant's Motions.

### I.  Facts

Plaintiff, Edna M. Dawson, was formerly employed by Defendant through the Department of Defense Education Activity as an elementary school teacher at the Robinson Barracks Elementary School in Stuttgart, Germany.  From August 1993 to June 1997, Plaintiff was supervised by Dr. Cynthia Gessling, the school's principal.  In August 1997, Susan Pleiss became the school's principal and Plaintiff's supervisor.  According to the allegations of Plaintiff's Complaint, Gessling and Pleiss engaged

-1-

in a series of hostile, racially motivated actions toward Plaintiff, an African-American, between 1993 and 1998.

In August 1993, Gessling approached Plaintiff and asked Plaintiff to leave her first grade class to teach fourth grade. Upon Plaintiff's objection, Gessling withdrew the request, and Plaintiff continued to teach first grade. Later that year, Gessling arranged an open house for the parents of Plaintiff's students to meet Plaintiff, and at that open house, Gessling questioned Plaintiff and attacked Plaintiff's teaching methods in front of the parents. After a theft of audio-visual equipment from a classroom used by Plaintiff and other teachers, Gessling ordered that Plaintiff and an African-American janitor be fingerprinted.

The following school year, Plaintiff was transferred to teach one of the school's two sixth grade classes. While the other class had one minority student, Plaintiff's class of twenty-eight was composed entirely of minority students. When Plaintiff questioned Gessling about the disparity, Gessling stated that Plaintiff had the "lower level class." Gessling also told Plaintiff that she had received complaints from parents regarding Plaintiff's lack of communication with the parents. According to Plaintiff, the complaints were unwarranted and were encouraged by Gessling herself. Subsequently, Gessling accused Plaintiff of making racially-derogatory statements to her sixth

grade students.  Gessling initiated an investigation into this allegation, and when the investigation absolved Plaintiff of wrongdoing, Gessling took no further action.

Gessling's alleged actions were directed only toward Plaintiff, and Gessling did not take any actions similar to those described above toward the school's white teachers.  Gessling subjected Plaintiff to a higher level of scrutiny than other teachers, directing other teachers to stand outside of Plaintiff's classroom and listen to Plaintiff's teaching.  Staff members not including Plaintiff also observed Gessling refer to the African-Americans at the school as having a "nigger mentality."

Plaintiff's problems continued after Pleiss became the school's principal in August 1997.  After Plaintiff recommended the assignment of a particular substitute teacher, Pleiss verbally reprimanded her.  During a fire drill, Pleiss caused a child to be pulled from Plaintiff's group without Plaintiff's knowledge, apparently in an effort to hold Plaintiff to a higher level of scrutiny than other teachers.  Pleiss also rearranged the class picture schedule in a manner that disrupted Plaintiff's class and inconvenienced Plaintiff.  Finally, Plaintiff alleges that Pleiss provided her with a lower performance rating than was warranted and required Plaintiff to provide special justification

for an "exceptional" performance rating.  According to Plaintiff, Pleiss did not evaluate white teachers in the same manner.

Based on these allegations, Plaintiff has filed a two-count Complaint, alleging hostile work environment and disparate treatment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").  The government has filed a Motion to dismiss Plaintiff's hostile work environment claim and a Motion for summary judgment as to Plaintiff's disparate treatment claim.  These Motions are currently before the Court.

## II.  Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint, *see Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994), and should be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *De Sole v. United States*, 947 F.2d 1169, 1177 (4th Cir. 1991) (citations omitted); *see also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In passing on a motion to dismiss, "the material allegations of the complaint are taken as admitted."  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted).  Moreover, "the complaint is to be liberally construed in favor of plaintiff."  *Id.*  In addition, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which

require only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.

As set forth in Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when the moving party can show by affidavits, depositions, admissions, answers to interrogatories, pleadings, or other evidence, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Rule 56 mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party is not entitled to summary judgment if there is a genuine issue of material fact in dispute.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of fact exists if a reasonable jury could return a verdict for a nonmoving party.  *See id.*  In other words, summary judgment appropriately lies only if there can be but one reasonable conclusion as to the verdict.  *See id.*  As the Fourth Circuit explained,

> [W]e must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion. Summary judgment is appropriate only where the record taken as a whole

>could not lead a rational trier of fact to find for the non-moving party, such as where the non-moving party has failed to make a sufficient showing on an essential element of the case that the non-moving party has the burden to prove.

*Tuck v. Henkel Corp.*, 973 F.2d 371, 374 (4th Cir. 1992) (citations omitted), *abrogated on other grounds in Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993).

### III.  Analysis

A.  Hostile Work Environment

Title VII provides that it shall be an unlawful employment practice for an employer to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of such person's race.  *See* 42 U.S.C. § 2000e-2(a)(1).  An employee's work environment is a term, condition, or privilege of employment.  *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 241 (4th Cir. 2000).  To demonstrate a racially-hostile work environment prohibited by Title VII, Plaintiff must demonstrate that she was the subject of conduct that was: (1) unwelcome; (2) based on race; (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and that (4) there is some basis for imposing liability on the employer.  *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183-84 (4th Cir. 2001).

The government's Motion to dismiss challenges Plaintiff's claim only with respect to the third element.

Plaintiff's hostile work environment claim is based on several remarks made by Gessling during her four years as Plaintiff's supervisor. Plaintiff also bases her claim in part on a series of actions, detailed above, in which she alleges that Gessling and Pleiss singled her out for less favorable treatment due to her race. According to the government, this type of conduct is not cognizable as a hostile work environment claim. The Court agrees.

Dismissal of a hostile work environment claim is appropriate where the plaintiff fails to allege the type of severe or pervasive gender, race, or age-based activity necessary to state a claim. *See Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). A review of the Fourth Circuit's decisions on the subject reveals that the type of conduct necessary to state a hostile work environment claim involves racially offensive remarks or other overt racially insulting conduct. In *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180 (4th Cir. 2004), for example, the Fourth Circuit held that no hostile work environment existed where the plaintiff contended that his supervisor sought to undermine the careers of African-Americans and to prevent the plaintiff's efforts to recruit other African-Americans. *Id.* at 190-91. The court emphasized the plaintiff's concession that "no one in the Booz-Allen workplace used racial epithets, racially derogatory terms, or demeaning

racial characteristics, or stereotypes with respect to [the plaintiff] or any other persons, in [the plaintiff's] presence." *Id.* at 191.  In *Bass*, the plaintiff alleged race and gender-based discrimination in her pay and her advancement.  324 F.3d at 765. The plaintiff's hostile work environment claim also rested on an allegation that she was reassigned for discriminatory reasons. *Id.* at 763.  Because she had not alleged the type of conduct that is cognizable as a hostile work environment claim, the Fourth Circuit affirmed the dismissal of her claim.  *Id.* at 765.

       In rebuttal, Plaintiff argues that this Court has not previously required overt racially offensive remarks or conduct. *See White v. Fed. Exp. Corp.*, 729 F. Supp. 1536, 1555 (E.D. Va. 1990) ("Racial epithets are not all that can establish a claim for hostile discrimination.").[1]  Although the Court found the evidence in that case to be sufficient to support a hostile work environment claim, the Fourth Circuit disagreed.  *See White v. Fed. Exp. Corp.*, 939 F.2d 157, 161 (4th Cir. 1991) (affirming this Court's decision on other grounds).  As such, *White* cannot be considered authority for the proposition that a hostile work environment claim may rest on actions motivated by latent discrimination.

---

[1] In *White*, this Court denied the defendant's motion for summary judgment on a hostile work environment claim where, in addition to two racial epithets, the plaintiffs asserted discrimination in their assignments and in the employer's disciplinary practices.  729 F. Supp. at 1555.

To the extent that Plaintiff seeks redress for any employment actions that were based on hidden race-based discrimination, her remedy lies in a disparate treatment claim. Were this Court to permit a hostile work environment claim premised on such allegations, it would be cognizing an end run around the required elements of a disparate treatment claim.[2] There is no authority for such a cause of action.

The Court therefore agrees with the government that the *sine qua non* of a hostile work environment claim is the presence, in the workplace, of racially offensive remarks or other actions that are, in and of themselves, racially insulting. *See, e.g., Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) ("When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated.") (citation and internal quotation marks omitted). The vast majority of Plaintiff's allegations involve administrative actions that facially bear no relation to Plaintiff's race. For the foregoing

---

[2] As will be more fully discussed below, a plaintiff in a disparate treatment case must demonstrate that, *inter alia*, her job performance was satisfactory, she suffered an adverse employment action, and similarly situated employees outside of her protected class received more favorable treatment. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 n.6 (1981). Plaintiff's theory would allow her to recover for discriminatory conduct that was not overtly hostile and that did not rise to the level of, for example, an adverse employment action.

reasons, the Court will not regard these allegations as supportive of Plaintiff's hostile work environment claim.

Plaintiff has raised two allegations that are properly classified under a hostile work environment claim.  The first is that Gessler referred to the African-Americans at the school as having a "nigger mentality" on several occasions outside Plaintiff's presence.  The second is that Gessler informed Plaintiff that she had been reassigned to the "lower level" class when Plaintiff questioned Gessler about the racial makeup of Plaintiff's sixth grade class.  In determining whether unwelcome, race-based conduct is so severe or pervasive as to create a hostile work environment, a court must look at the totality of the circumstances.  Relevant circumstances include: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance."  *Smith*, 202 F.3d at 242.

Undoubtedly, Gessling's use of the term "nigger mentality" constituted severe conduct.  *See Spriggs*, 242 F.3d at 185 ("Far more than a 'mere offensive utterance,' the word 'nigger' is a pure anathema to African-Americans.").  Nevertheless, Plaintiff does not allege that Gessling's remarks were directed toward Plaintiff or were made in Plaintiff's presence.  Thus, while this allegation may be considered in

evaluating Plaintiff's hostile environment claim, *see Spriggs*, 242 F.3d at 184, it will not by itself support the claim.  *See Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 190 (4th Cir. 2004) ("[T]here is no evidence in the record, nor does Honor allege, that Callahan or anyone else directed any racially-offensive conduct at Honor himself.  Honor makes much of the treatment of other Booz Allen employees, but we focus on Honor's personal experience.").

According to Plaintiff's allegations, Gessling referred to Plaintiff's sixth grade class as the "lower level" class on one occasion.  Even upon assuming that Plaintiff took offense to this comment because of the racial makeup of her class, Plaintiff alleges only one, isolated incident.  Upon considering this incident together with Gessling's more serious comments, Plaintiff has alleged at most a handful of incidents, all but one of which she did not witness, over the course of five years.  The Court cannot conclude that Plaintiff has alleged frequent or pervasive conduct.  In *Hartsell v. Duplex Products, Inc.*, 123 F.3d 766 (4th Cir. 1997), the Fourth Circuit held that summary judgment was appropriate against a sexual harassment claim premised on four derogatory comments directly referencing the plaintiff's gender.  *Id.* at 773-74.  The comments occurred over the course of the plaintiff's three-month tenure of employment. *See id.* at 768.  The Fourth Circuit held that the comments were

"trivial" and "far from the paradigmatic case of sexual harassment," and further held that the comments were "isolated." *Id.* at 773. Likewise, this Court finds the alleged incidents, which occurred over the course of five school years, to be isolated.

Title VII "prohibits only harassing behavior that is so severe or pervasive as to render the workplace objectively hostile or abusive." *Id.* The majority of Plaintiff's Complaint alleges conduct that is not of the type that is appropriate for a hostile work environment claim. Plaintiff's remaining allegations establish, at best, a series of isolated incidents that took place over an extended period of time. Such allegations are insufficient to state a claim for hostile work environment under Title VII. Accordingly, the government's Motion to dismiss Count I will be granted.

B.  Disparate Treatment

To establish a prima facie case of disparate treatment, Plaintiff must demonstrate that: (1) she was a member of a protected class; (2) her job performance was satisfactory; (3) she suffered an adverse employment action by her employer; and (4) similarly situated employees outside of her protected class received more favorable treatment. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 n.6 (1981).  The

government's Motion for summary judgment challenges Plaintiff's claim with respect to the third element.

The typical requirements for a showing of an "adverse employment action" that would support a Title VII claim include "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion."  *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999).  Conduct short of "ultimate employment decisions" might also constitute adverse employment actions, but the conduct must adversely affect the terms, conditions, or benefits of the plaintiff's employment.  *See Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001).  For example, a job transfer might be considered an adverse employment action if the transfer exposes the plaintiff to more dangerous conditions or stifles the plaintiff's advancement.  *See id.* at 868.  In other words, where a job reassignment forms the basis for a claim of adverse employment action, the plaintiff must show that the reassignment had a "significant detrimental effect" on her.  *Boone*, 178 F.3d at 256.

Gessling's 1993 request that Plaintiff transfer to teach a fourth grade class did not constitute an adverse employment action.  Plaintiff has not alleged or demonstrated that the proposed transfer had a "significant detrimental effect" on her.  *Id.*  Further, the reassignment was never effectuated,

and Gessling actually withdrew the request.  It is thus inconceivable that Gessling's request was an adverse employment action.  *See Hinson v. Clinch County, Ga. Bd. of Educ.*, 231 F.3d 821, 829 n.10 (11th Cir. 2000) ("A proposed, uneffectuated transfer is not an adverse employment action.").

According to the Fourth Circuit, "terms, conditions, or benefits of a person's employment do not typically, if ever, include general immunity from the application of basic employment policies or exemption from . . . disciplinary procedures."  *Von Gunten*, 243 F.3d at 869.  Increased scrutiny of an employee under the general policies and disciplinary procedures governing her employment is therefore not an adverse employment action.  *See id.*  For that reason, Plaintiff's disparate treatment claim necessarily fails to the extent that it relies on her supervisors' increased scrutiny pursuant to general employment policies and disciplinary procedures.  This includes the open house incident at which Gessling criticized Plaintiff's teaching methods, Gessling's discussion of parental complaints about Plaintiff, Gessling's direction of other teachers to observe Plaintiff, and Pleiss's removal of a child from Plaintiff's class during a fire drill exercise.  Likewise, Gessling's alleged criticism of Plaintiff during these incidents fails to rise to the level of an adverse employment action.  *See, e.g., Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001); *Chappell v. School*

*Bd. of the City of Va. Beach*, 12 F. Supp. 2d 509, 517 (E.D. Va. 1998).

Plaintiff's claim also rests on some of these incidents to the extent that they harmed her professional reputation. For example, Plaintiff claims that she became labeled as a "problem teacher" after Gessling criticized her teaching methods at the open house event and after Gessling solicited complaints from parents of Plaintiff's students. Plaintiff argues that these incidents constituted adverse employment actions because they harmed her ability to teach in the community. Because Plaintiff has submitted no allegation or evidence as to any tangible negative impact on the opportunities available to her, however, her argument on this point is speculative at best. Such speculation about future adverse consequences of a supervisor's actions is insufficient to create a genuine dispute of material fact and fails to convert the supervisor's conduct into an adverse employment action. *See James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 377 (4th Cir. 2004).

Next, the Court will consider Gessling's decision to require Plaintiff to be fingerprinted following the theft of audio-visual equipment and Gessling's investigation of Plaintiff's alleged racially derogatory comments. The Fourth Circuit has not considered whether the initiation of an investigation against an employee can constitute an adverse

employment action.  The Fourth Circuit has held, however, that it is not an adverse employment action to place an employee on administrative leave pending the investigation of a complaint against her.  *See von Gunten*, 243 F.3d at 868.  In light of this principle, it is evident that the mere decision to initiate an investigation is not an adverse employment action.  Other courts are in accord.  *See, e.g., Mora v. Ashcroft*, 142 Fed. Appx. 206, 207 (5th Cir. 2005); *Johnston v. O'Neill*, 130 Fed. Appx. 1, 7 (6th Cir. 2005).  Furthermore, Gessling's decision to have Plaintiff fingerprinted during the theft investigation is not an adverse employment action.  *Cf. Polkey v. Transtecs Corp.*, 404 F.3d 1264, 1267-68 (11th Cir. 2005) (suggesting that taking an employee's polygraph is not an adverse employment action in analyzing a claim under the Employee Polygraph Protection Act of 1988, 29 U.S.C. § 2002).

  The Court will next turn to Plaintiff's 1994 transfer to a sixth grade class.  Plaintiff does not allege that the transfer constituted a demotion, entailed a decrease in pay or benefits, resulted in the loss of job title or supervisory responsibility, reduced her opportunities for promotion, or affected the terms, conditions, and benefits of her employment in any other way.  In other words, there was no "significant detrimental effect."  *See Boone*, 178 F.3d at 255-56.  Accordingly, the transfer was not an adverse employment action.

Pleiss's reprimand of Plaintiff regarding the assignment of a substitute teacher was not an adverse employment action.  Disciplinary actions cannot constitute adverse employment actions where the disciplined employee does not lose pay or benefits as a result and where, after the discipline is effectuated, she maintains the same position.  *See Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 651-652 (4th Cir. 2002).  As Plaintiff did not lose pay, benefits, or status as a result of Pleiss's reprimand, there was no adverse employment action.

For purposes of this Motion, the Court will assume that Pleiss intentionally rearranged the class picture schedule in an effort to inconvenience Plaintiff.  Even if that were the case, however, it would not constitute an adverse employment action.  *See Brodetski v. Duffey*, 141 F. Supp. 2d 35, 44 (D.D.C. 2001) (holding that a supervisor's schedule change constituted "a mere inconvenience . . . not sufficiently adverse to sustain a prima facie case" of retaliation under Title VII).

Finally, Plaintiff cannot rely on Pleiss's performance evaluation of her to establish an adverse employment action.  The Fourth Circuit has held that "a poor performance evaluation 'is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipients employment.'" *James*, 368 F.3d at 377 (quoting *Spears v. Missouri Dep't of Corr. & Human Res.*, 210 F.3d

850, 854 (8th Cir. 2000)).  Here, Plaintiff has neither alleged nor submitted evidence that Pleiss used Plaintiff's performance rating to alter the terms or conditions of Plaintiff's employment.  In fact, Pleiss changed the performance rating after Plaintiff objected and justified her arguments to Pleiss.  The performance evaluation was therefore not an adverse employment action.

"In sum, an employee's dissatisfaction with this or that aspect of work does not mean an employer has committed an actionable adverse action."  *James*, 368 F.3d at 377.  Plaintiff has based her disparate treatment claim on a series of incidents that she claims were undertaken for discriminatory reasons.  Even assuming this to be true, however, Plaintiff has not shown that any of these incidents adversely affected the terms, conditions, or benefits of her employment.  For this reason, the Court will grant the government's Motion for summary judgment as to Count II.

### IV.  Conclusion

For the foregoing reasons, the Court will grant the government's Motion to dismiss Count I and the government's Motion for summary judgment as to Count II.

February 8, 2006  _____/s/_____
Alexandria, Virginia                James C. Cacheris
                         UNITED STATES DISTRICT COURT JUDGE